UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| MYRA FONTENOT | : | CIVIL ACTION NO. |
| | : | |
| VERSUS | : | JUDGE: |
| | : | |
| CITY OF BUNKIE, | : | |
| MAYOR MIKE ROBERTSON, in his | : | MAGISTRATE JUDGE |
| official capacity, and CHIEF OF POLICE | : | JURY DEMAND |
| BOBBY CORNER, in his individual and | : | |
| official capacities, BOARD OF | : | |
| ALDERMEN MEMBERS BRENDA | : | |
| SAMPSON, GREGORY PRUDHOMME, | : | |
| LEM THOMAS II, TRAVIS ARMAND, | : | |
| CLAYTON "RICK" HENDERSON, | : | |
| in their official capacities | : | |

# C O M P L A I N T

NOW INTO COURT, through undersigned counsel, comes MYRA FONTENOT ("Fontenot" or "Plaintiff") who shows as follows:

## I. JURISDICTION AND VENUE

1. This is an action for declaratory, injunctive and monetary relief for discrimination in employment in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, codified at 42 U.S.C. Section 2000e *et seq.* and 42 U.S.C. Section 1981. Jurisdiction is based on 42 U.S.C. Section 2000e-5(f)(3) and 28 U.S.C. Sections 1331 and 2201. Pursuant to 28 U.S.C. Section 1367, Plaintiff further invokes the supplemental jurisdiction of this Court to hear and decide claims arising under state law. Pursuant to 42 U.S.C. Section 20003-5, venue is proper in the Western District as a judicial district within the state where the unlawful practices occurred.

## II. PARTIES

2. Plaintiff, Myra Fontenot, is an African American adult female citizen of

the United States and the State of Louisiana. She is domiciled at 245 Roderick St., Ville Platte, LA 70586.

3. Made Defendants herein are:

(a) City of Bunkie ("City"), a chartered municipality in Avoyelles Parish, Louisiana, through its Police Department ("BPD");

(b) Mike Robertson ("Mayor Robertson"), the current mayor of the City of Bunkie. Mayor Robertson is sued in his official capacity as the policy-maker and appointing authority for the BPD;

(c) Bobbie Corner ("Chief Corner"), Chief of BPD. Chief Corner is sued in his official and individual capacities as the policy-maker and agent of the appointing authority for the BPD.

(d) Brenda Sampson ("Ms. Sampson"), is sued in her official capacity as a member of the Board of Aldermen;

(e) Gregory Prudhomme ("Mr. Prudhomme"), is sued in his official capacity as a member of the Board of Aldermen;

(f) Lem Thomas, II ("Mr. Thomas"), is sued in his official capacity as a member of the Board of Aldermen;

(g) Travis Armand ("Mr. Armand"), is sued in his official capacity as a member of the Board of Aldermen;

(h) Clayton "Rick" Henderson ("Mr. Henderson"), is sued in his official capacity as a member of the Board of Aldermen.

4. At all times referred to in this Complaint, Defendant City was Plaintiff's "employer" within the meaning of 42 U.S.C. Section 2000e(b), La. R.S. 23:301 et seq.,

La. R.S. 51:2256 and La. R.S. 23:967.

### III.  FACTUAL ALLEGATIONS

5.  Fontenot began her employment with BPD in the Patrol Division in July 2014.

6.  Fontenot took unpaid leave to work on an outside political campaign beginning in September 2014 and returned to work in February, 2015.

7.  Between the months of February and May, 2015, Fontenot was assigned additional the positions of Shift Supervisor, Payroll Officer, Training Coordinator and Dispatch Supervisor.

8.  Shortly after her return to work in February 2015, Fontenot experienced sexual harassment in that she was subjected to numerous sexual advances, jokes, comments, including, but not limited to

(i) calling her by inappropriate names with sexual innuendo;

(ii) telling her that she smelled good;

(iii) telling her that she looked "fine" in her pants;

(iv) telling her that he loved her eyes and that she did not know what it did to him when she looked at him;

(v) Inappropriately touching her in private areas.

9.  In May 2015, Fontenot complained to her fellow officers about Chief Corner's conduct and was advised by officers Victor Greenhouse, Jordan Santayo, and Seth Juneau, that if she refused any of the sexual advances of Chief Corner, and specifically if she refused to have sex with Chief Corner, the extra positions she was assigned would all be taken away by Chief Corner. At no time did Fontenot consent to

any of this type of conduct, and she continued to complain regarding the same.

10. Despite the sexual harassment she was experiencing, Fontenot continued to perform her job duties and in June 2015 she was assigned an additional position of Investigator In-Training and, in July 2015, she was given the keys to all of the BPD offices. During the August 2015 meeting of the Board of Aldermen, Fontenot was promised a raise to $13.00 an hour.

11. Notwithstanding her career achievements, Fontenot continued experiencing sexual harassment from Chief Corner. In July 2015 she courageously demanded Chief Corner to stop this unwanted sexual advances.

12. In August 2015, Fontenot had a heated dispute with Chief Corner when his daughter asked Fontenot if she was going to be her third "mommy." Embarrassingly, Fontenot was later required to explain to Chief Corner's daughter that nothing was going on between her dad and Fontenot.

13. Looking for any support and relief, Fontenot continued to complain about Chief Corner to other officers. Several male officers stated that they had spoken with Chief Corner about his inappropriate conduct, but notwithstanding this effort on their part, Fontenot did not receive any relief to her complaint.

14. Fontenot also witnessed and opposed inappropriate sexual conduct from Chief Corner towards other female employees of BPD, including, but not limited to, Wyneka Washington, Shandi Aymand, Latanya Rideau, Jalisa Thomas, and Jena Hargrove.

15. In September, 2015, Fontenot, along with a dispatcher Wyneka Washington, asked Chief Corner in an open meeting to stop all inappropriate sexual

conduct. Following these complaints, chief Corner refused to stop inappropriate conduct and, instead mocked these complaints, implying that both women were hyper-sensitive.

16. Visibly upset from the earlier complaint against him, Chief Corner approached Fontenot in October, 2015, and falsely accused her of sleeping with another male officer, not wanting to "give pussy" to him and that she "was fucking her way from the bottom up." Said allegations were untrue and caused Fontenot to conclude that the sexual harassment she and other female employees were experiencing from Chief Corner was not going to stop unless complaints were made directly to the City leaders.

17. Following this incident, Fontenot filed a formal complaint with Mayor Robertson's office.

18. After her complaint with Mayor's office, Fontenot started experiencing retaliation from Chief Corner.

19. Prior to her formal complaint of sexual harassment to city leaders, Fontenot had a work schedule which allowed her to attend college in Alexandria. But, immediately following her complaint of sexual harassment, Chief Corner revised Fontenot's work hours such that she could no longer attend her college classes and she, therefore, had to resign from school.

20. Additionally, Chief Corner began scrutinizing Fontenot's work more closely and inquiring with her previous employers about her record there – more than a year after she had been employed with the City of Bunkie.

21. In November, 2015, Fontenot filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging gender discrimination and sexual harassment and retaliation for opposing the same.

22. Following the filing of her charge with the EEOC, Fontenot's working conditions became worse. Within days of filing her formal complaint, Chief Corner (i) stripped Fontenot of her weapon and gave her a Taser instead; (ii) began following her around at night during her shift (which he had never done prior to Fontenot filing the complaint); (iii) allowed other officers to harass her by radio while he was on duty at the Marksville Police Department, by recalling (overriding) calls that Fontenot made to the officers on her shift while she was in capacity of Supervisor on shift; (iv) approached Officer Roger Spann several times about Fontenot and spoke of her in a derogatory fashion; (v) more closely scrutinized Fontenot's job performance; and (vi) requested that Officer Spann report all of Fontenot's off duty and on duty conduct to him.

23. On November 9, 2015 Fontenot was relieved of her duties by Chief Corner. Chief Corner had Officer Spann and other officers meet him at Ace Hardware, away from the department, and questioned Officer Spann about what he could do to make this sexual harassment thing go away. This conduct caused Fontenot to be frightened, because she did not know what Chief Corner would do next, especially after hearing him say on more than one occasion that he would "blow up a mother fucker" and blame it on his Post Traumatic Stress Disorder.

24. The same month as her filing of the EEOC charge, Chief Corner told Fontenot that she was relieved of her duties at BPD. Fontenot tried to contact Chief Corner and Asst. Chief Keller to discuss the same, but her phone calls were not returned.

25. Once again, Fontenot sought assistance of Mayor Robertson, who arranged for her to go back to work.

26. On her first day back to work, Fontenot was called into a meeting with

Chief Corner, written up for insubordination and failure to follow procedures – a false accusation. She was also told that her job was in jeopardy.

27. Retaliation against Fontenot continued and became worse, jeopardizing her career.

28. Notwithstanding the fact that Chief Corner himself instructed Fontenot to get her firearms qualification with any certified firearms instructor in the state of Louisiana, once she received her qualification from Mr. Doug Bretnell, a certified firearms instructor, Chief Corner contacted the instructor and advised him not to send Fontenot's scores to POST in Baton Rouge. The action jeopardized Fontenot's firearms certification.

29. Additionally, after receiving her twenty in-service hours, Chief Corner contacted POST and refused to send Fontenot's record in, once again, jeopardizing her career.

30. Fontenot continued her complaints to the Mayor and the Board of Aldermen. No relief to stop the harassment was provided. The Board of Aldermen, instead, passed a resolution in its April, 2016 meeting, that Fontenot could be placed in a City Hall position and removed from the BPD. Such a move would have required Fontenot to relinquish all rights to her supplemental pay due her as a fulltime police officer, and, was, thus, retaliatory per se.

31. On April 2, 2016 Fontenot received a call from Officer Greenhouse stating that Wyneka Washington was advised by Asst. Chief Keller and Chief Corner to contact Fontenot to tell her to bring all of her belongings back to the BPD.

32. On April 7, 2016 Latanya Rideau (Toni) contacted Fontenot and told her

that Chief Corner advised her not to turn in Fontenot's firearms because he was not going to accept it. Officer Greehouse also told Fontenot that Asst. Chief Keller stated in his presence that they would see to it that Fontenot never went back to work at BPD.

33. On May 9, 2016, Fontenot amended her charge with the EEOC to include retaliatory acts.

34. Following Fontenot's amendment of her EEOC charge, on May 10, 2016 Chief Corner sent Fontenot home without any explanation. Fontenot contacted Mayor Robertson and he, through Mr. Scott Thomas, counsel for the Louisiana Municipal Association, advised Fontenot to return to work at BPD, and if she was sent home again, she would be paid for hours missed.

35. As advised by Mayor Robertson, Fontenot returned to work on May 13, 2016, but was sent home by Chief Corner again. Chief Corner told Fontenot that she would receive an explanatory letter from either the Mayor, Board of Aldermen, or City Attorney regarding her employment status, but Fontenot never received this letter.

36. On April 12, 2016 Chief Corner requested to have a special meeting to discuss Fontenot's employment status. Fontenot was advised to attend a meeting on April 16, 2016. The meeting was declined, and Fontenot was advised not to attend the meeting by Mayor Robertson.

37. On two different occasions, on May 17, 2016 and June 3, 2016, Fontenot requested to be placed on the agenda for the City of Bunkie Board of Aldermen meeting, limited to discussing her employment status only. Both times her request was denied.

38. Unsure of her position with the BPD, on June 8, 2016, Fontenot went to work on her usually scheduled shift, but Chief Corner advised Fontenot that she had been

terminated from her employment with the BPD. To date, Fontenot still has not received any termination or COBRA paperwork.

## COUNT ONE – DUE PROCESS VIOLATION

39. Fontenot had property interest arising as a public employee from her employment with the City. The City, through Chief Corner, deprived Fontenot of her property interest without due process. Even assuming arguendo that City had cause to terminate Fontenot (and Fontenot denies the same), Fontenot shows that City failed to provide Fontenot a notice and an opportunity to defend herself prior to termination, such that her termination is an absolute nullity that cannot be cured. Fontenot seeks and is entitled to recover all wages and benefits that she would have received under her employment, had it not been terminated without due process.

## COUNT TWO – LAWRASON ACT

40. Defendant City is governed by the Lawrason Act set forth in La.R.S. 33:321-463. While Chief Corner is the ex officio constable with general responsibility for law enforcement in the City, the Chief has no authority under the Lawrason Act to hire or terminate police personnel. Only the Mayor and the Board of Aldermen have said authority. As such, the purported termination of Fontenot's employment is null and void and Fontenot should be reinstated and made whole for all wages and benefits due her. See La.R.S. 39:1311.

## COUNT THREE – VIOLATION OF TITLE VII AND STATE LAW

41. Plaintiff reasserts and realleges the allegations contained in the foregoing paragraphs as though fully restated herein.

42. Plaintiff reported sexual harassment and gender discrimination that she

believed she was experiencing to both Chief Corner and Mayor Robertson. She further opposed discrimination and/or participated in the opposition to discrimination she witnessed occurring against herself and other female employees of Defendants.

43. The actions, conduct and procedures of Defendants complained of herein constitutes purposeful discrimination against Plaintiff based upon her gender and/or in retaliation for opposition to discrimination in violation of Title VII of the Civil Rights Act, as amended, 42 U.S.C. 2000e, La. R.S. 23:301 et. seq. and La. R.S. 51:2256 and 23:967 as detailed below.

44. Defendants' actions complained of herein were performed with malice or reckless indifference to and in knowing violation or reckless disregard of Plaintiff's federally protected rights.

45. Plaintiff has no adequate remedy at law for the harm she has suffered as a result of the discriminatory practices of Defendant set forth herein.

46. As a result of the Defendant's actions, Plaintiff has been injured and has suffered or incurred damages and is entitled to recover statutory damages include compensatory damages, back pay, benefits, special damages, reinstatement, and reasonable attorney fees resulting from the illegal conduct.

**COUNT FOUR – VIOLATION OF LOUISIANA WHISTLEBLOWER STATUTE**

47. Plaintiff reasserts and realleges the allegations contained in the foregoing paragraphs as though fully restated herein.

48. The Louisiana "whistleblower" statute, La. R.S. 23:967, provides that "an employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law... [the employee] discloses, objects to or

refuses to participate in an employment act or practice that is in violation of law." La. R.S. 23:967(A)(3). The statute defines "reprisal" to include termination of employment or any discriminatory action the court finds was taken as result of an action by the employee that is protected under the statute. Statutory damages include compensatory damages, back pay, benefits, special damages, reinstatement, and reasonable attorney fees resulting from the reprisal.

49. Within the meaning of La. R.S. 23:967, Fontenot, in good faith, advised the Defendants that an employment act or practice violated applicable law, viz., sexual harassment of other female employees of BPD.

50. Within the meaning of La. R.S. 23:967, Fontenot, objected to, or refused to participate in, an employment act or practice that was in violation of law, viz., sexual harassment of other female employees of BPD.

51. Within the meaning of La. R.S. 23:967, as a result of Fontenot's advice to her employer of the violation of law and her good faith objection to, or refusal to participate in, an employment act or practice that is in violation of law, the Defendant engaged in "reprisal" against Fontenot and other discriminatory action. To be clear, Fontenot was discriminated against because of her knowledge of an illegal workplace practice and/or her refusal to participate in the practice, opposition to the same, or intention to report it. *Kite v. Kite Bros.*, 74 So.3d 1266, 1271 (La.App.3rd Cir. 2011).

52. Defendants discriminated against Fontenot because of her refusal to violate applicable law, including her disclosure of violation of state laws, her refusal to accept violations of state law, including sexual discrimination and retaliation for opposing the same.

53. As a result of the Defendants' actions complained of herein, the Defendants are liable for damages resulting to Plaintiff from the violation of the Louisiana Whistleblower Statute, La. R.S. 23:967, including compensatory damages, back pay, benefits, special damages, reinstatement, and reasonable attorney fees resulting from the reprisal.

### COUNT FIVE – ABUSE OF RIGHTS

54. Plaintiff reasserts and realleges the allegations contained in the foregoing paragraphs as though fully restated herein.

55. Refusal to submit Fontenot's firearm's qualification and in-service hours to POST is not only retaliatory, but constitutes an abuse of rights. Chief Corner conducted himself in a retaliatory manner designed to punish Fontenot for filing charge of discrimination with the EEOC and complaining to Mayor Robertson and other officers regarding the sexual harassment and retaliation for complaining of the same.

56. In doing so, Chief Corner (i) exercised rights exclusively for the purpose of harming another or with the predominant motive to cause harm to Fontenot; (ii) exercised the rights without serious or legitimate reasons; (iii) used the rights in violation of moral rules, good faith or fundamental fairness; or (iv) exercised the right for a purpose other than that for which it was granted. *Lee v. Pennington*, 02-0381 (La. App. 4 Cir. 10/16/02), 830 So.2d 1037; *Morse v. J. Ray McDermott & Co.*, 344 So.2d 1353 (La. 1977); *Truschinger v. Pak*, 513 So.2d 115 (La. 1987); *Illinois Central Railroad Co. v. International Harvester*, 368 So.2d 1009 (La. 1979).

57. As a result of the Defendants' actions complained of herein, Defendants are liable for damages resulting to Plaintiff from the violation of the abuse of rights

doctrine, including compensatory damages, back pay, benefits, special damages, reinstatement, and reasonable attorney fees resulting from the reprisal.

**COUNT SIX – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

58. Plaintiff reasserts and realleges the allegations contained in the foregoing paragraphs as though fully restated herein.

59. In this case: (i) Defendants' conduct complained of herein was extreme and outrageous; (ii) the emotional distress suffered by Fontenot was severe; and (iii) Defendants desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from their conduct. *White v. Monsanto*, 585 So.2d 1205 (La. 1991). Defendants' actions complained of herein were outrageous in character and extreme in degree, because said actions and conduct were atrocious and egregious and went "beyond all possible bounds of decency" and were "regarded as atrocious and utterly intolerable in a civilized community." *Arledge v. Sherrill*, 738 So.2d 1215, (La.App.2nd Cir. 1999).

60. The extreme and outrageous conduct of Defendants complained of herein was done in a willful and wanton manner, and constituted a disregard for the rights and well-being of the Plaintiff and were substantially certain to cause Plaintiff severe emotional distress.

61. As a direct and proximate result of Defendants' actions complained of herein, Plaintiff has been injured and has suffered severe emotional distress and is entitled to recover for the injuries, offenses and damages to be proved at trial.

62. The conduct of Defendants complained of herein, directly and/or proximately caused Plaintiff to suffer severe and painful injuries and damages which

presently include, but are not limited to:

    a)    Severe emotional distress, mental anguish, embarrassment, humiliation;

    b)    physical pain and suffering;

    c)    past medical expenses;

    d)    future medical expenses;

    e)    loss of enjoyment of life;

    f)    loss of earnings and/or earning capacity; and

    g)    all other elements of damages and injuries, as may be shown at the trial of this matter.

## IV.  ADMINISTRATIVE PREREQUISITES

63.  Plaintiff filed a charge of discrimination with the Louisiana Human Rights Commission and the Equal Employment Opportunity Commission ("EEOC") within 180 days of the discriminatory employment practices described in this Complaint.

64.  Plaintiff has requested the issuance of a notice of right to sue and will amend this Complaint once the same is received.

## V.  JURY TRIAL DEMANDED

65.  Plaintiff demands a trial by jury as to all matters permitted by law.

## VI.  RELIEF

WHEREFORE, PLAINTIFF PRAYS:

(A)  That the Court declare the employment practices of which complaint is made to be in violation of 42 U.S.C. §2000e *et. seq.*, 42 U.S.C. Section 1981, La. R.S. 39:1311, La. R.S. 23:301 *et seq.*, La. R.S. 51:2256, La. R.S. 23:967, and La. Civ. Code Art. 2015 and otherwise inculpatory and illegal;

(B)  That the Court order Defendants to cease the discriminatory and

retaliatory practices enumerated herein and enjoin Defendants from engaging in further discrimination or retaliation against Plaintiff because of her disclosures and threat to disclose violations of state law, race discrimination or her efforts to oppose Defendants' discriminatory and retaliatory practices;

(C) That Plaintiff be awarded back pay, including prejudgment interest, and any other benefits or seniority to which she may have been entitled or which she may have lost as a result of the discrimination or retaliation against her.

(D) That Plaintiff be awarded compensatory damages pursuant to 42 U.S.C. Section 1981a, 42 U.S.C. Section 1981, La. R.S. 39:1311, La. R.S. 23:303, La. R.S. 51:2264, La. R.S 23:967 and La. Civ. Code Art. 2015.

(E) That Plaintiff be awarded the costs of this action, including attorneys' fees pursuant to 42 U.S.C. §2000e-5(k), La. R.S. 39:1311, La. R.S. 23:303, La. R.S. 51:2264, La. R.S. 23:967 and La. Civ. Code Art. 2015.

(F) That Plaintiff be awarded punitive damages pursuant to 42 U.S.C. Section 1981a and 42 U.S.C. Section 1981.

(G) For trial by jury for those matters triable to a jury; and

(H) That Plaintiff be awarded such other and further relief as the Court finds equitable, just and proper.

Respectfully submitted,
DOWNER, JONES, MARINO & WILHITE
401 Market Street, Suite 1250
Shreveport, LA 71101
Tel: 318-213-4444
Fax: 318-213-4445
Allison A. Jones, Bar No. 16990

By: /s/ Allison A. Jones
ATTORNEYS FOR PLAINTIFF